UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
EMMANUEL CAZARES and ERICK PEREZ,
Individually and on Behalf of All
Others Similarly Situated,                    **MEMORANDUM AND ORDER**

                                              15-CV-0477 (KAM)(RML)

                    Plaintiffs,

      -against-



AVA RESTAURANT CORP d/b/a BUCCANEER
DINER and COSTAS ALEXIOU, Jointly
And Severally,


                    Defendants.
---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

           Plaintiffs Emmanuel Cazares ("Cazares") and Erick Perez

("Perez" collectively with Cazares "Named Plaintiffs" or

"plaintiffs") bring this collective and class action on behalf of

themselves and others similarly situated, pursuant to the federal

Fair Labor Standards Act of 1983 ("FLSA") and the New York Labor

Law ("NYLL"), alleging that defendants AVA Restaurant Court d/b/a

Buccaneer Diner and Costas Alexiou ("defendants"), violated the

minimum wage and overtime provisions of both statutes, as well as

NYLL's spread-of-hours and wage notice provisions.  Presently

before the court is plaintiffs' motion to certify plaintiffs' NYLL

claims as a Federal Rules of Civil Procedure Rule 23(b)(3) class.

For the reasons stated herein the Motion is granted.

## Background

Defendants Costas Alexiou ("Alexiou") and AVA Restaurant Corp are the owners of Buccaneer Diner, which is located on Astoria Boulevard in Queens County, New York. (Complaint ("Compl."), ECF No. 1, at ¶¶ 1, 10.) Plaintiffs Cazares and Perez are former employees of the Buccaneer Diner who worked there as servers, bussers, dishwashers and delivery employees.[1] (*Id.* at ¶¶ 1, 35, 43.) Plaintiffs allege that prior to the filing of this lawsuit, defendants never paid overtime premiums to any of their employees, and paid the vast majority of their employees at rates significantly below the minimum wage. (*Id.* at ¶¶ 57-58, 61.) Further, defendants never paid any of their employees a spread-of-hours premium for working a shift of more than ten hours, nor did defendants provide their employees with accurate wage notices or wage statements as required under New York law. (*Id.* at ¶¶ 56, 60-61.)

On January 20, 2015, plaintiff filed this collective and class action on behalf of themselves and those similarly situated. (Compl., ECF No. 1). Plaintiffs bring eight claims under the FLSA, 29 U.S.C. §§ 201 *et seq.* and NYLL §§ 650 *et seq.* (*Id.* at ¶¶ 2, 69-93.). Counts 1 and 2 allege FLSA collective action claims for,

---

[1] Opt-in plaintiff Randy Jones has been dismissed from this law suit. (*See* So Ordered Stipulation of Dismissal as to Opt-In Plaintiff Randy Jones, ECF No. 74.) Accordingly, the court did not consider his affidavit or any references to him when deciding this motion.

respectively, unpaid minimum wage and unpaid overtime. (*Id.* at ¶¶ 68-75.) Counts 3 to 7 allege NYLL claims for: failure to pay minimum wage for all hours worked; failure to pay overtime premiums for hours worked in excess of forty per week; failure to pay spread-of-hours premiums for days in which the employees' work lasted ten or more hours; failure to provide accurate wage notices on the date of hire and/or prior to February 1 of each applicable year; failure to provide a wage statement with each payment of wages; and failure to reimburse for the purchase of required uniforms, failure to provide uniform maintenance and deduction for uniform expenses from employee pay.[2] (*Id.* at ¶¶ 76-93.)

On July 22, 2015, plaintiffs moved for conditional certification of the collective action under the FLSA. (ECF No. 16.) The motion was unopposed and on September 14, 2015, Magistrate Judge Robert M. Levy conditionally certified the FLSA collective action. (*See* Minute Entry dated September 14, 2015.) On March 24, 2016, plaintiffs moved for spoliation sanctions against defendants after learning that defendant Alexiou discarded a computer containing Buccaneer Diner's employment records, including the payroll records at issue in this litigation. (ECF No. 40 at 1.) On July 14, 2016, Magistrate Judge Levy found that defendants failed to preserve electronically stored information

---

[2] Plaintiffs are not seeing class certification for the uniform expense claim at this time. (Pl. Mem., ECF 56 at 3.)

("ESI") in violation of Fed. R. Civ. P. 37(e) and that the ESI cannot be restored or replaced through additional discovery. Judge Levy also found that plaintiffs were prejudiced by the loss of the information. (*See* Minute Entry dated July 14, 2016.) On July 28 and July 29, 2016, the parties filed their fully briefed class certification papers. (ECF Nos. 55-63.)

## Discussion

### I. Standard of Review

Rule 23 of the Federal Rules of Civil Procedure governs class certification. In order to proceed as a class action, the proposed class must meet the following Rule 23(a) prerequisites:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 98-99 (2d Cir. 2007). "In addition, while Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts. This implied requirement is often referred to as 'ascertainability.'" *Reyes v. City of Rye*, No. 13-CV-9051 (NSR), 2016 WL 4064042, at *2 (S.D.N.Y. Jul. 28, 2016) (quoting *In re*

4

*Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002)).

The district court is afforded broad discretion in class certification questions because it is often in the best position to assess the propriety of the class action. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir.2001). Additionally, the district court has the ability to "alter or modify the class, create subclasses, and decertify the class whenever warranted." *Id.* If the Rule 23(a) criteria are satisfied, the proposed class must also qualify under at least one of the categories provided in Rule 23(b) to be certified as a class action. *See Cordes*, 502 F.3d at 104. Plaintiffs seek certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only individual members" and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

After certifying a class, the court "'must define the class and the class claims, issues, or defenses, and must appoint class counsel,' considering the work counsel applying for appointment has already done in the action, counsel's relevant experience and knowledge of the applicable law, and the resources that counsel plans to dedicate to the action." *Reyes*, 2016 WL 4064042, at *3 (citing Fed. R. Civ. P. 23(c)(1)(B) & 23(g)(1)(A)).

"Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). "If a class action is certified under Rule 23(b)(3)—as Plaintiffs' have requested in this action—the court 'must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Reyes*, 2016 WL 4064042, at *3 (citing Fed. R. Civ. P. 23(c)(2)(B)).

A plaintiff moving for class certification must establish each of the Rule 23 requirements by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). When deciding whether to certify a class, the court must "resolve[] factual disputes relevant to each Rule 23 requirement" and find that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Although the Rule 23 analysis may overlap with issues going to the merits, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* The only question at the class certification stage "is whether [plaintiffs] may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals." *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476 (S.D.N.Y. 2005).

## II. Analysis

For the reasons discussed herein, the court finds that plaintiffs have satisfied the requirements of Rule 23, and therefore, class certification is appropriate.

### A. Rule 23(a)

#### i. Numerosity

Under Rule 23(a)(1), numerosity is presumed where a putative class has forty or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Plaintiffs assert and provide evidence that both the purported Class and the Subclass meet the numerosity standard. Plaintiffs rely on the Payroll Spreadsheets defendants produced for the purpose of distributing the notice to Collective Action members, which is comprised of employees working in the same positions as the alleged Class Members. (Memorandum of Law In Support of Plaintiffs' Motion for Class Certification ("Pls. Mem."), ECF No. 56 at 15.) The Payroll Spreadsheets show sixty employees. (Payroll Spreadsheets, Exhibit ("Ex.") 1 to the Declaration of Brent E. Pelton ("Pelton Decl."), ECF No. 57-1 at 1.) Plaintiffs also argue that there are likely significantly more Class Members, in light of the NYLL's longer limitations period. (Pls. Mem., ECF No. 56 at 15.) Further, defendant Alexiou testified that there was significant turnover at the Buccaneer Diner, and approximately twenty dishwashers and bussers cycled through the business per

year. (Declaration of Brent E. Pelton in Further Support of Plaintiffs' Motion for Class Certification ("Pelton Reply Decl."), Alexiou Dep., Ex. B, ECF No. 59-2 at 97:15-98:16.). Accordingly, the court finds that numerosity is satisfied. *See Reyes*, 2016 WL 4064042, at *4 (numerosity satisfied where records show that the class had more than forty members).

As for the Subclass, which includes all servers, bussers, dishwashers, delivery employees and food preparers but excludes cooks, defendant Alexiou testified that he typically employed five cooks at any given, some of whom also doubled as food preparers. (Alexiou Dep., Ex. 6 to Pelton Decl., ECF No. 57-6 at 8:7-16.) Thus, it is highly likely that at least forty servers, bussers, dishwashers, delivery employees and food preparers were employed during the significantly shorter Collective Action Period alone, thus satisfying numerosity for the Subclass. Defendants argue that plaintiffs have not carried their burden because plaintiffs rely on the Payroll Spreadsheets produced by defendants. The court respectfully finds defendants' arguments meritless and frivolous. Defendants produced the spreadsheet in response to plaintiffs' document requests for relevant documents, and plaintiff should be entitled to rely on them. Moreover, there is evidence that defendants discarded the Buccaneer Diner computer which contained the payroll records at issue in this litigation. Accordingly, the court finds that

plaintiffs have established that numerosity is satisfied for the Class and Subclass by a preponderance of the evidence. *See Shahriar, Inc.*, 659 F.3d at 252; *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (numerosity satisfied on the basis of documents reflecting that the class had more than forty members).

### ii. Commonality

To establish commonality, the plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that the plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution——which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)) (internal quotation marks omitted). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."

*Poplawski v. Metroplex on the Atl., LLC*, 11 Civ. 3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012).

Here, the declaration of opt-in plaintiff Vega and the Payroll Spreadsheets collectively provide evidence that a common pattern and policy of defendants paying wages below the minimum wage for members of the Subclass, and failing to pay overtime premiums and spread-of-hours premiums for all Class Members. (Declaration of Matias Vega, Ex. 10 to Pelton Decl., ECF No. 57-10 at ¶ 4-8; Payroll Spreadsheets, Ex. 1 to Pelton Decl., ECF No. 57-1.) Plaintiffs and the Class Members also share in common the question of whether they received wage statements and whether any wage notices received were accurate. Further, the question of whether defendants' practices and policies violated the law is a common question to both the plaintiffs and the Class Members. "Thus, answers to the common policy and legal questions undoubtedly will 'drive the resolution of the litigation' with respect to all parties." *Reyes*, 2016 WL 4064042, at *5 (quoting *Wal-Mart*, 564 U.S. at 349-50); *see Shahriar*, 659 F.3d at 252 (commonality requirement satisfied where plaintiffs' "NYLL class claims all derive from the same compensation policies and tipping practices"). Accordingly, the commonality requirement is satisfied.

Defendants argue that because plaintiffs were paid in cash, the commonality requirement is not met because different

records were kept for employees paid in check as compared to employees paid in cash. (Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, ("Defs. Opp."), ECF No. 60 at 16.) Defendants' argument is misguided, however. The issues here are not about how the employees received their salaries but, rather, the policies that determined the amount of their salaries, such as whether employees received at least the minimum wage or whether they received overtime wages or a spread-of-hours premium. The court finds that defendants' arguments in opposition fail, and that plaintiffs have met the commonality requirement.

### iii. Typicality

"The requirements of commonality and typicality tend to merge, because both serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-03312 (RA)(SN), 2016 WL 4379421, at *8 (S.D.N.Y. Jun. 13, 2016), R&R *adopted sub nom. Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA), 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016) (citing *In re NYSE Specialists Secs. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009)).

"Typicality 'requires that the claims of the class representatives be typical of those of the class.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*

*L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). "The typicality requirement serves to 'ensure that a class representative has the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *Pichardo*, 2016 WL 4379421, at *8, *R&R adopted sub nom.*, 2016 WL 5338551 (quoting *In re NYSE Specialists Secs. Litig.*, 260 F.R.D. at 71).

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying [the] claims." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y. 2014) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)). "Differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual plaintiff might be entitled if and when liability is found, not the amenability of the plaintiffs' claims to the class action form." *Pichardo*, 2016 WL 4379421, at *7, *R&R adopted sub nom.*, 2016 WL 5338551 (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007)) (modifications omitted).

The preponderance of the evidence before the court satisfies the typicality requirement because the alleged harms suffered by the plaintiffs are typical of those of the class they seek to represent. All Class Members, including plaintiffs, were employed by the defendants and allegedly were subjected to the same allegedly unlawful employment practices and policies. The Payroll Spreadsheets show that the purported Subclass Members were paid wage rates far below the federal or state minimum wage. (*See* Payroll Spreadsheets, Ex. 1 to Pelton Decl., ECF No. 57-1.) Further, the Payroll Spreadsheets also show that all Class Members, including plaintiffs, received straight-time pay rates even when they worked more than 40 hours in a given week. (*Id.*) Thus, plaintiffs' claims are typical of the Class and the Subclass and, therefore, plaintiffs are incentivized to litigate vigorously all claims in this action. *See Shahriar*, 659 F.3d at 252 (finding typicality satisfied where "all Class Members were subject to the same tipping policies"); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality met where all class members were subject to the same policies regarding their employers' distribution of a service charge).

Defendants argue that plaintiffs' claims are not typical of the class because none of the plaintiffs worked as food preparers or cooks. (Defs. Opp., ECF No. 60 at 17.) Defendants argument fails, however, because typicality is usually found where

the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 CIV. 5124 AT, 2015 WL 5813382, at *4 (S.D.N.Y. Sept. 28, 2015) (citing *Robidoux*, 987 F.2d at 936-37). Further, the Payroll Spreadsheets show that the food preparers and the cooks were paid in the same manner as the other employees and, as discussed above, were subjected to the same alleged unlawful employment policies. Accordingly, plaintiffs have carried their burden of establishing typicality.

### iv. Adequacy

To satisfy Rule 23(a)(4)'s adequacy requirement, the plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation marks and modifications omitted). "To meet the adequacy requirement, the class members must not have interests that are antagonistic to one another, and class counsel must be qualified, experienced, and able to conduct the litigation." *Murphy v. LaJaunie*, No. 13-CV-6503 RJS, 2015 WL 4528140, at *5 (S.D.N.Y. Jul. 24, 2015) (quoting *Brown v. Kelly*, 609 F.3d 467, 479 (2d Cir. 2010) and *Baffa v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.
2000)) (internal quotation marks omitted).  The adequacy inquiry
"serves to uncover conflicts of interest between named parties and
the class they seek to represent." *Amchem Prods.,* 521 U.S. at
625.  "A conflict must be fundamental for it to defeat a motion
for certification." *Murphy*, 2015 WL 4528140, at *5 (citing *In re
Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.
2009)).

Defendants argue that plaintiffs are "untrustworthy" and
are not adequate class representatives because one of the named
plaintiffs allegedly "tricked" an employee into joining the
lawsuit and plaintiffs' counsel failed to explain certain forms to
the employee.  (Defs, Opp., ECF No. 60 at 19-20.)  Defendants cite
certain inconsistencies between Perez and Cazares' deposition and
the declarations submitted in support of this motion.  (*Id.*)
Defendants' argument fails because inconsistencies or inaccuracies
in the named plaintiff's statements may reflect either a
misunderstanding, or may raise an issue as to plaintiff's
credibility, but do not necessarily disqualify him as an adequate
class representative. *See Chime v. Peak Sec. Plus, Inc.,* 137 F.
Supp. 3d 183, 211 (E.D.N.Y. 2015) (holding that inconsistencies
may call plaintiff's credibility into question but they do not
necessarily disqualify plaintiff from serving as a class
representative"); *Jackson v. Bloomberg LP*, 298 F.R.D. 152, 165

(S.D.N.Y. 2014) (a "possible discrepancy" between plaintiff's recollection and "the actual hours plaintiff worked" does not render plaintiff an inadequate class representative where others corroborated the overtime allegations).

Defendants also cite to circumstances surrounding five Buccaneer Diner employees (the "Buccaneer Five") initially opting into the lawsuit and their subsequent withdrawal of the lawsuit, as reasons why plaintiffs are inadequate class representatives. (Def. Opp., ECF No. 60 at 19.) There has been no finding that plaintiffs or plaintiffs' counsel have acted inappropriately in this action. Instead, the defendants have already been found to be in violation of Fed. R. Civ. P 37(e), by failing to preserve discoverable evidence, namely the payroll records stored on Buccaneer Diner's computer. (*See* Minute Entry dated July 14, 2016.) Further, Alexiou stated during his deposition that he asked Mr. Hugo Ortiz, one of the Buccaneer Five, why Mr. Ortiz was suing him and asked him, if he wanted to "come out from the lawsuit," and, after speaking with his attorney, directed Mr. Ortiz to send a letter to plaintiffs' counsel. (Alexiou Depo., annexed to Def. Opp., ECF No. 60-15 at 18:14-25, 19:2-23.) Alexiou also stated that he referred Mr. Ortiz to an attorney recommended by Alexiou's attorney, so Mr. Ortiz and others could withdraw from the lawsuit. Alexiou also stated that he spoke to Mr. Ortiz every day because Mr. Ortiz still works at the Buccaneer Diner. (*Id.* at 20:4-17.)

Defendant Alexiou's admissions raise serious concerns about his conduct.

Plaintiffs' conduct, on the other hand, shows that they are able to prosecute this action vigorously. Plaintiffs have retained experienced and competent counsel, who has guided them through this process. Pelton Graham LLC has extensive experience in the area of wage and hour litigation in the food service industry. Plaintiffs' counsel has spent significant time and work preparing this action for litigation, including marshalling the available evidence in light of defendants' spoliation. (Pelton Decl., ECF No. 57 at ¶¶ 2-7; *see generally* the Docket.)

Accordingly, the court finds that plaintiffs' interests are not antagonistic to the other Class Members because plaintiffs and the other Class Members were subject to the same alleged unlawful employment policies and practices. The court is satisfied that plaintiffs and plaintiffs' counsel will adequately represent Class and Subclass Members. As such, plaintiffs have met the Rule 23(a) adequacy requirement. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."); *Pichardo*, 2016 WL 4379421, at *9, *R&R adopted sub nom.*, 2016 WL 5338551 (finding plaintiffs' counsel

adequate who specialized in labor and employment litigation and who "was ready, willing and able" to represent the class).

### v. Ascertainability

Although it is not stated explicitly in Rule 23(a), "there is an implied requirement that the membership of the class be identifiable and ascertainable." *Fonseca*, 2015 WL 5813382, at *5 (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 121 (S.D.N.Y. 2012)) (modifications omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* (quoting *Stinson v. City of N. Y.*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012)). Here, the proposed class is easily identifiable from defendant's records: all servers, bussers, dishwashers, delivery employees, food preparers and cooks who worked at Buccaneer Diner at any time during the Class Period. The proposed subclass, too, is readily identifiable: all servers, bussers, dishwashers, delivery employees and food preparers who worked at Buccaneer Diner during the Class Period. To the extent that plaintiffs may not know the exact function of each Class Member during different days of the Class Period, that is largely attributable to defendants' failure to preserve their payroll records after the commencement of this litigation. Thus, the court will not permit defendants to benefit from their conduct by finding that plaintiffs' are unable to carry their burden of showing ascertainability. Besides, the court finds that the Payroll

Spreadsheets establish, by a preponderance of the evidence, that the Class Members and the Subclass Members are ascertainable. *Pichardo*, 2016 WL 4379421, at *9, *R&R adopted sub nom.*, 2016 WL 5338551 (finding proposed class was ascertainable where class members were "easily identifiable through payroll and employment records"); *Ramirez*, 39 F. Supp. 3d at 366 (holding that the implied requirement of ascertainability was satisfied because members of the class could be ascertained by reference to date of employment and information from payroll records).

### B. Rule 23(b)

As the Rule 23(a) prerequisites have been met, the court now turns to the Rule 23(b) to determine whether common legal or factual issues predominate over individual issues, and whether a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). For the reasons discussed herein, the court finds that common issues predominate and the class action is the superior method for adjudicating the claims presented here.

### i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.*, 521 U.S. at 623. "The predominance requirement is more demanding than the commonality requirement in Rule 23(a); Plaintiff must show that the case is subject to generalized proof applicable to the class as a whole."

*Pichardo*, 2016 WL 4379421, at *10, *R&R adopted sub nom.*, 2016 WL 5338551 (quoting *Espinoza*, 280 F.R.D. at 125) (internal quotation marks omitted). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *McLaughlin on Class Actions* § 5:23) (internal quotation marks omitted).

"Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." *Id.* (citing *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227 (2d Cir. 2006)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Pichardo*, 2016 WL 4379421, at *10, *R&R adopted sub nom.*, 2016 WL 5338551 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

The predominance requirement is satisfied here. "District courts 'have routinely found that common questions

predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'" *Fonseca*, 2015 WL 5813382, at *5 (quoting *Murphy*, 2015 WL 4528140, at *7 (collecting cases)). Plaintiffs allege that defendants' employment policies and practices are unlawful. For all Class Members, the issues of whether they received the required overtime premium, and whether they received wage notices and wage statements, as well as spread-of-hours pay accruing on or after January 1, 2011, predominate over all individualized inquiries. And, as for the Subclass, the issue of whether defendants violated New York's minimum wage and spread-of-hours law also predominates. Thus, the questions at issue here predominate because defendants will likely be liable to all parties or to none. *See Schear*, 297 F.R.D. at 126 (holding that "class issues predominate over individualized issues because" if plaintiffs succeed in proving the alleged unlawful policy "then each of the class plaintiffs will likely prevail" on his or her claims) (citing *Shahriar,* 659 F.3d at 253).

"'Moreover, the fact that each Class Member's damages may vary is not relevant to the predominance inquiry, because damages calculations merely entail the application of simple mathematical computations that are consistent with the theories of liability.'" *Fonseca*, 2015 WL 5813382, at *6 (quoting *Murphy*, 2015 WL 4528140, at *7); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d

401, 407 (2d Cir. 2015) (noting that a classwide damages model is not required to demonstrate predominance); *Schear*, 297 F.R.D. at 126 (finding that the calculation of damages for tips that were allegedly unlawfully retained and distributed was a "straightforward, mechanical process").

Here, if defendants are found liable, calculating damages would be a "straightforward mechanical process." *Id.* The Payroll Spreadsheets and the Weekly Worksheets provide the pay rates and the hours worked for a number of the Subclass and Class Members. Thus, determining damages for plaintiffs' minimum wage, overtime, and spread-of-hours claims would be a matter of performing simple arithmetic using the data defendants have produced. That the rate of pay or the hours worked would vary for each Class Member does not defeat predominance because the same basic formula would apply to each Class Member. *See Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 419 (S.D.N.Y. 2014) (holding that "the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)") (citation omitted); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 73 (S.D.N.Y. 2013) ("[N]either the existence of individual defenses nor difficulties in calculating damages in and of themselves defeat the predominance requirement.") (citation omitted). Accordingly, plaintiffs' have met the predominance requirement.

### ii. Superiority

To proceed under Rule 23(b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently employed by the defendants." *Fonseca*, 2015 WL 5813382, at *6; *see also Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citations omitted) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually. . . . In addition, since some class members are still [defendants'] employees . . ., class members may fear reprisal and would not be inclined to pursue individual claims.").

Defendants' argument that each Class Member "can easily file claims with the New York State Department of Labor" is unavailing. (Def, Opp., ECF No. 60 at 24.) Courts regularly find that where the proposed class "is significantly numerous and possesses relatively small individual claims" and "many potential class members are foreign-born, have limited reading and writing skills, and may fear reprisal from Defendants," a class action is

23

both "cost-efficient and fair" and "likely the only device by which many of the proposed class members would obtain relief." *Moreira v. Sherwood Landscaping Inc.*, No. CV 13-2640 (AKT), 2015 WL 1527731, at *15 (E.D.N.Y. Mar. 31, 2015) (citations and modifications omitted) (adding that class action is superior "given that the NYLL claims are nearly identical to the FLSA claims"); *Damassia*, 250 F.R.D. at 164 (holding that FLSA and NYLL class claims should be tried together "because it allows for a more cost-efficient and fair litigation of common disputes"); *Iglesias-Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (holding that the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results" (internal quotation marks and citation omitted)). Accordingly, a class action is the superior method for adjudicating this case.

As plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3)'s requirements, the class certification motion is hereby GRANTED.

## C. Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must . . . appoint class counsel under Rule 23(g)." Counsel for the named plaintiffs request that the court designate their firm, Pelton Graham LLC, as counsel for the NYLL class.

Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As discussed above, counsel for plaintiffs has presented evidence of their extensive experience litigating wage and hours cases and knowledge concerning the applicable law. (Pelton Decl., ECF No. 57 at ¶¶ 2-9.). Moreover, Pelton Graham LLC has represented the plaintiffs in this action since its inception and, therefore, has expended substantial resources identifying and investigating the potential claims in the action. (*Id.* at ¶ 7.) Finally, Pelton Graham LLC has acted as lead or class counsel in

multiple cases in this district. (*See id.* at ¶¶ 8-9 (listing cases where Pelton Graham LLC was either lead counsel or class counsel).) Plaintiffs have demonstrated the firm's commitment and financial ability to represent the NYLL class. Accordingly, Pelton Graham LLC is appointed as counsel for the Class.

### D. Proposed Class Notice

Plaintiffs have submitted a proposed Class Notice pursuant to Fed. R. Civ. P. 23(c)(2). (ECF No. 57-14.) Rule 23(c)(2)(B) requires that the court direct that "class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."). The notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Defendants have objected to the plaintiffs' proposed Class Notice and submitted a proposed Class Notice with revisions.

(*See* ECF Nos. 68-69.)   Plaintiffs' have consented to some of defendants' proposed revisions.  (ECF No. 70.)  The court finds no issue with revisions that the plaintiffs' have consented to.  The court addresses the defendants' other proposed revisions in turn below.

First, defendants' revisions as to the scope of the proposed Class Notice is rejected.  (ECF No. 69 at 3-4.)  The court has found, as discussed in detail above, that the Class and Subclass, as defined by plaintiffs, meet Rule 23's class certification requirements.

Next, the court rejects defendants' suggested addition to Paragraph No. 3 to include language regarding the court's position, and the deletion of Paragraph No. 5.  (ECF No. 69 at 3-4.)  Plaintiffs' proposed Class Notice already contains similar language to that requested by defendants in Paragraph No. 5 and at the end of the Class Notice.  The proposed Class Notice adequately and concisely explains that the court has decided class certification, but not the merits of the case at this juncture.

Third, the court rejects defendants' request to distribute the Spanish translation of the Class Notice.  (ECF No. 68 at ¶ 4.)  The Spanish translation of the Class Notice shall be distributed in the same manner as the court-approved Class Notice. Further, plaintiffs shall create a Spanish translation by a certified Spanish language translator of the court-approved Class

Notice and submit the Spanish translation to defendants for approval.

Next, the court finds defendants' objections to plaintiffs' counsel's distribution of the court-approved Class Notice to be without merit. (*Id.* at ¶ 5.) Defendants' did not object to plaintiffs' counsel's distribution of the 216(b) Notice, and defendants have not provided any facts supporting its arguments that plaintiffs' counsel will not properly distribute the Class Notice. The court will, however, allow the parties to decide between having the court-approved Class Notice being distributed by a third-party claims administrator or by plaintiffs' counsel.

Fifth, the court denies defendants' revision to Paragraph No. 10 to include language "encouraging" Class Members to "hear both sides' perspectives in this action." (ECF No. 69 at 6.) Because the court has decided to certify the class, this revision would run in direct contravention with New York Rule of Professional Conduct 4.2(a), which prohibits an attorney from communicating "or caus[ing] another to communicate" with a represented party about subject of the representation. *See Jackson v. Bloomberg L.P.*, No. 13-CV-2001 JPO, 2015 WL 1822695, at *2 (S.D.N.Y. Apr. 22, 2015) ("Rule 4.2 applies to members of a class after class certification."); *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG) (SMG), 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010), *objections overruled*, No. 07-CV-3629 ILG, 2010 WL 3417847

(E.D.N.Y. Aug. 27, 2010) ("[U]pon certification, defense counsel is bound by New York Rule of Professional Conduct 4.2(a)," which provides that "a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.").

Next, the court finds that a 60-day opt-out period would unnecessarily delay this litigation. (ECF No. 68 at ¶ 8.) Further, the court is concerned about intimidation that some Class Members may face because many are still employed at the Buccaneer Diner. Moreover, the court finds that a 30 day-opt out period is enough time for Class Members to decide if they wish to participate in the suit. Accordingly, defendants' revision extending the opt-out period to 60 days is denied.

Sixth, the court denies defendants' suggested revision to the court authorization language near the end of the proposed Class Notice. (ECF No. 69 at 6.) The court finds the language in plaintiffs' proposed Class Notice is clear and concise. (ECF No. 57-14, Ex. 14 to Pelton Decl., Proposed Class Notice at 3.) Further, similar language is routinely approved in class and collective notices. *See Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 WFK VMS, 2015 WL 4603117, at *18 (E.D.N.Y. July 29,

2015) (approving nearly identical language regarding court authorization and collecting other cases requiring this language).

Next, the Class Notice shall include language relating to attorneys' fees. (ECF No. 68 at ¶ 10.) The Class Notice shall use the same language included in the Court-approved 216(b) Notice, except that the phrase "collective action" shall be replaced with the phrase "class action."

Finally, defendants make several other stylistic revisions to the proposed Class Notice. Those revisions are rejected because the court finds that they do not improve upon the clarity of the proposed Class Notice.

## Conclusion

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED** and the court **ORDERS**:

1. Plaintiffs' NYLL claims for unpaid overtime premiums, failure to provide wage notices and wage statements, as well as spread-of-hours claims accruing on or after January 1, 2011 (the "Class Claims"), on behalf of a class defined as: all servers, bussers, dishwashers, delivery employees, food preparers and cooks who worked at Buccaneer Diner (the "Class" or "Class Members") at any time from January 30, 2009 through the present (the "Class Period") is hereby certified;

2. Plaintiffs' NYLL claims for unpaid minimum wage and such spread-of-hours claims as accrued prior to January 1, 2011 (the "Minimum Wage Claims" or "Subclass Claims") on behalf of a sub-class defined as: all servers, bussers, dishwashers, delivery employees and food preparers (the "Minimum Wage Subclass" or "Subclass Members"), who worked at Buccaneer Diner during the Class Period is hereby certified;

3. Named Plaintiffs Emmanuel Cazares and Erick Perez are hereby appointed as class representatives for the Class and the Subclass;

4. Pelton Graham LLC is hereby appointed as Class Counsel;

5. Defendants shall furnish to plaintiffs' counsel or a third-party claims administrator in electronically readable form the contact information, dates of employment and job positions/titles of all members of the Class so that plaintiffs can issue class notice;

6. Plaintiffs and defendants shall meet and confer, and by April 14, 2017: (i) submit a joint revised proposed class notice; and (ii) advise the court whether a third-party claims administrator will be engaged or whether plaintiffs' counsel will serve the court-approved Class Notice.

**SO ORDERED.**

Dated:     March 31, 2017
           Brooklyn, New York

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge