IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EMMANUEL CAZARES and ERICK PEREZ,** Individually and on Behalf of All Others Similarly Situated, <br><br>                **Plaintiffs,** <br><br> -against- <br><br> **AVA RESTAURANT CORP. d/b/a BUCCANEER DINER and COSTAS ALEXIOU,** Jointly and Severally, <br><br>                **Defendants.** | 15 Civ. 477 (KAM)(RML) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "Agreement") is made and entered into by and between plaintiffs Emmanuel Cazares and Erick Perez (the "Named Plaintiffs"), plaintiffs Jorge Hernandez, Jose Hernandez, Adolfo Antonio, Reynaldo Reyes, Diego Matias Vega Flores, and Oscar Lopez (the "Opt-in Plaintiffs"), individually and on behalf of all Class Members (as hereinafter defined, and collectively with the Named Plaintiffs and Opt-in Plaintiffs, the "Plaintiffs") and defendants Ava Restaurant Corp. d/b/a Buccaneer Diner ("Buccaneer Diner") and Costas Alexiou ("Alexiou" and, collectively with Buccaneer Diner, the "Defendants").

**WHEREAS,** on January 30, 2015, Named Plaintiffs filed, in the United States District Court for the Eastern District of New York, a complaint in an action entitled <u>Emmanuel Cazares and Erick Perez, Individually and on Behalf of All Others Similarly Situated v. Ava Restaurant Corp. d/b/a Buccaneer Diner and Costas Alexiou, Jointly and Severally,</u> Civil Action No. 15 Civ. 477 (KAM)(RML) (the "Litigation"). The Plaintiffs' Collective and Class Action Complaint asserts violations of the Fair Labor Standards Act and New York Labor Law on behalf of themselves and all similarly situated servers, bussers, dishwashers, delivery employees, food preparers and cooks employed at Buccaneer Diner at any time since January 30, 2009;

**WHEREAS,** on February 20, 2015, Defendants responded to the Complaint by denying all material allegations of wrongdoing, asserting numerous defenses to the claims asserted therein;

**WHEREAS,** on September 14, 2015, this Court approved an opt-in collective action as to Plaintiffs' FLSA claims for unpaid minimum wage and overtime premiums on behalf of all servers, bussers, dishwashers, delivery employees and cooks employed at Buccaneer Diner at any time

from January 30, 2012 through September 14, 2015 (Order and Minute Entry of the Court dated Sept. 14, 2015);

**WHEREAS**, the Plaintiffs made a motion for spoliation sanctions which resulted in a Court Order awarding attorney's fees and costs to Class Counsel, in an amount that remains undetermined and immaterialized (Order of the Court dated July 14, 2016);

**WHEREAS**, on March 31, 2017, this Court entered an Opinion and Order certifying Plaintiffs' NYLL claims for unpaid minimum wage, overtime premiums, unpaid spread-of-hours, and failure to provide wage notices and wage statements, and on behalf of all servers, bussers, dishwashers, delivery employees, food preparers and cooks employed at Buccaneer Diner at any time from January 30, 2009 through March 31, 2017 (Dkt. No. 76, the "Class Certification Order");

**WHEREAS**, although during the Litigation the Parties have disputed the number and identity of individuals who fall within the class certified by the Court and although Defendants have not admitted and do not hereby admit that the Court-certified class properly includes any or all of the one hundred and twenty-one (121) individuals included in the list compiled by Class Counsel, for settlement purposes only, the Parties have agreed that the settlement Class consists of up to one hundred and twenty one (121) current and former non-managerial employees of Buccaneer Diner whose names appear on a list compiled by Class Counsel;

**WHEREAS**, Plaintiffs and Defendants desire to fully and finally and settle in full all claims against Defendants that Plaintiffs raised in the Complaint;

**WHEREAS**, following extensive negotiations including a settlement conference before this Court and a full-day mediation before Elena Paraskevas-Thadani, the Parties have reached a settlement in this case which, the preliminary agreement which was set forth in a term sheet created and signed by the Parties on October 6, 2017 and which is memorialized in this Agreement;

**WHEREAS**, before entering into this Agreement, discovery was complete and depositions of all Parties were conducted as was significant document production meaning that this case was sufficiently investigated and developed to allow for the advantages and disadvantages of settlement to be thoroughly analyzed and evaluated;

**WHEREAS**, the Parties spent significant time researching and analyzing the law relative to the causes of action and defenses raised, the respective merits of the claims and defenses, additional issues that have arisen during the course of the Litigation including matters raised before the Court set forth above, and potential proof and evidentiary issues which may arise at trial, which allowed the Parties to evaluate and negotiate intelligently and freely the advantages and disadvantages of settlement;

**WHEREAS**, Plaintiffs and Class Counsel believe their claims have merit and that they could prove liability and damages if this matter proceeds to trial. However, in connection with this Agreement, Plaintiffs and Class Counsel have fully assessed the probability of success and the risks of establishing liability and damages, and have also taken into consideration the time and expense of continued litigation and that the Named Plaintiffs, Opt-in Plaintiffs and Class Members

who opt into the settlement may receive a significant payment, who may not receive any payment without a settlement. This Agreement is based upon alleged damages to all Named Plaintiff, Opt-in Plaintiffs and Class Members, and was negotiated taking the full Class into consideration;

**WHEREAS**, the Defendants have vigorously defended this case and denied, and continue to deny, all liability and damages. However, in connection with this Agreement, the Defendants have fully assessed the probability of success and the risks of Plaintiffs establishing liability and damages to the entire Class, and have also taken into consideration the time and expense of continued litigation;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.  **DEFINITIONS**

1.1  **The defined terms set forth in this Agreement have the meanings ascribed to them below.**

1.2  **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.3  **Acceptance Period.** "Acceptance Period" means the one hundred twenty (120) day period after mailing of the Settlement Check within which an Eligible Class Member must cash or negotiate a Settlement Check.

1.4  **Claim Form.** "Claim Form" shall mean the form annexed hereto as "**Exhibit A,**" as approved by the Court, that Class Members other than the Named and Opt-in Plaintiffs must complete and return in the manner and time period set forth therein to be eligible for a distribution from the Net Settlement Fund. The Claim Form need not be completed and submitted by Named Plaintiff and Opt-in Plaintiffs, who will automatically receive a distribution of the Settlement Fund unless they Opt-Out from the Settlement.

1.5  **Claim Period.** "Claim Period" means the period within which time Class Members must mail Claim Forms to Class Counsel in order to participate in the Settlement. The Claim Period shall close thirty (30) days before the Second Distribution Payment Date.

1.6  **Class.** "Class" comprises of a total of One Hundred and Twenty One (121) individuals which, upon agreement between Class Counsel and Defendants, includes but is not limited to "all servers, bussers, dishwashers, delivery employees, food preparers and cooks who worked at Buccaneer Diner at any time from January 30, 2009 through the present (March 31, 2017)" in accordance with this Court's Class Certification Order (Dkt. No. 76, at 31). The Class list, as drawn up by Class Counsel is annexed hereto as "**Exhibit E.**"

1.7  **Class Counsel.** "Class Counsel" shall mean the law offices of Pelton Graham, LLC and its attorneys Brent E. Pelton, Esq. and Taylor B. Graham, Esq.

**1.8    Class Members.** "Class Members" includes all members of the Class who have not previously opted out of this Litigation and who do not complete and timely submit an Opt-Out Statement in accordance with the requirements of this Agreement.

**1.9    Class Notice.** "Class Notice" means the Notice of Class Action Settlement annexed hereto as **"Exhibit B,"** as approved by the Court, that shall be mailed by Class Counsel shall mail to all Class Members in the manner and time period set forth hereinafter.

**1.10    Deadline Reminder Notice.** "Deadline Reminder Notice" means the notice form annexed hereto as **"Exhibit C,"** as approved by the Court, that shall be sent by Class Counsel to Class Members from whom Class Counsel has not received a Claim Form within thirty (30) days after the mailing of Settlement Checks for the First Payment Distribution.

**1.11    Defendants.** "Defendants" or "Buccaneer Diner" shall mean Ava Restaurant Corp. d/b/a Buccaneer Diner and Costas Alexiou, and each of their present and former owners, parents, subsidiaries, affiliates, successors, shareholders, members, related entities, directors, officers, employees, representatives, agents and assigns, and all persons acting by, through, under or in concert with any of them.

**1.12    Defendants' Counsel.** "Defendants' Counsel" shall mean the law offices of Pardalis & Nohavicka, LLP and its attorneys.

**1.13    Effective Date.** "Effective Date" of the settlement shall mean the latest of (i) thirty (30) days following the date the Court has entered a Final Approval Order approving this executed Agreement, if no appeal is taken; (ii) the entry of a final order and judgment after all appeals and petitions are resolved; or (iii) thirty (30) days after all Named Plaintiffs and Opt-in Plaintiffs have executed this Agreement and delivered the same to Defense Counsel at Pardalis & Nohavicka, LLP, 950 Third Avenue, New York, NY 10022, whichever occurs last.

**1.14    Eligible Class Members.** "Eligible Class Members" shall mean the Named Plaintiffs, Opt-in Plaintiffs, and all Class Members who do not complete and timely submit an Opt-Out Statement and who timely submit a Claim Form in accordance with the requirements of this Agreement. Although the number of class members has been disputed between the parties, this Agreement has been reached on the premise that the class comprises up to 121 eligible members. For the avoidance of doubt, any individual who was previously a Class Member and has subsequently opted out of this Action is not an Eligible Class Member.

**1.15    Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.16    Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks, Service Awards and Class Counsel's fees and dismissal of the Litigation with prejudice.

**1.17    First Payment Distribution.** "First Payment Distribution" shall refer to the first round of Settlement Checks. The amount of the First Payment Distribution shall be Two Hundred

4

Thousand Dollars and Zero Cents ($200,000.00), to be allocated among Eligible Class Members who mail in their Claim Forms no later than ninety (90) days after the initial mailing of Notice.

1.18   **First Payment Date.** "First Payment Date" means the date by which Defendants must mail the Settlement Checks for the First Payment Distribution to Class Counsel, which shall be no later than thirty (30) days after entry of the Final Approval Order.

1.19   **Gross Settlement Amount.** "Gross Settlement Amount" means the Three Hundred and Forty Thousand Dollars ($340,000) that Defendants have agreed to pay to settle the Litigation as set forth in this Agreement. The Gross Settlement Amount is the maximum total payment by Defendants under this Settlement, including all attorney's fees and past, present and future costs, interest and any other payment provided by this Settlement (including the cost of administering the Settlement).

1.20   **Litigation.** "Litigation" means the above-captioned case, <u>Emmanuel Cazares and Erick Perez, Individually and on Behalf of All Others Similarly Situated v. Ava Restaurant Corp. d/b/a Buccaneer Diner and Costas Alexiou, Jointly and Severally,</u> Civil Action No. 15 Civ. 477 (KAM)(RML).

1.21   **Named Plaintiffs.** "Named Plaintiffs" means Emmanuel Cazares and Erick Perez.

1.22   **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Settlement Amount (as defined below in <u>Section 1.33</u>) after deductions for Service Awards to the Named Plaintiffs and Court-approved attorneys' fees and costs for Class Counsel.

1.23   **Notice Date.** "Notice Date" shall mean the date Class Counsel mails the Class Notice to the Class in accordance with the Preliminary Approval Order.

1.24   **Objector.** "Objector" means an individual who files an objection to this Agreement.

1.25   **Opt-in Plaintiffs.** "Opt-in Plaintiffs" mean the current and former employees of Defendants who returned at "Consent to Become a Party Plaintiff" form to Class Counsel during the pendency of the Litigation and who have not opted out of the class action. Specifically, such individuals are Jorge Hernandez, Jose Hernandez, Adolfo Antonio, Reynaldo Reyes, Diego Matias Vega Flores, and Oscar Lopez.

1.26   **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.27   **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; and (ii) directing the manner and timing of providing Notice to the Class Members.

1.28   **Released Federal Law Claims.** "Released Federal Law Claims" means any and all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, arising under Federal law, relating to the payment of wages, overtime wages, and expenses including the Fair Labor

Standards Act of 1938 ("FLSA"), whether known or unknown, and whether anticipated or unanticipated, by an Eligible Class Member, that arose or accrued from January 30, 2012 through the date of the execution of this Agreement. This includes (under such claims) requests for any type of relief, including without limitation claims for damages, unpaid wages, premium pay, unpaid overtime, tips, gratuities, adjustments to compensation, unreimbursed expenses, waiting-time penalties, or other penalties for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise; and which were or which could have been asserted in this Lawsuit against any Releasees.

1.29  **Released State Law Claims.** "Released State Law Claims" for a Class Member shall collectively mean any and all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, whether known or unknown, and whether anticipated or unanticipated, by all Class Members who do not opt-out, that arose or accrued from January 30, 2009 through the date the date of the execution of this Agreement relating to the payment of wages, premium pay, unpaid overtime, unpaid spread-of-hours pay, adjustments to compensation, alleged deductions from compensation, unreimbursed expenses, waiting-time penalties, or other penalties for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise. This release includes any and all claims which were or which could have been asserted in the Complaint that arose under the laws of New York, including for any failure to pay any type of overtime compensation, spread-of-hours pay or minimum wage to any Eligible Class Member, any failure to pay timely wages, including payment of wages at termination, any alleged deduction from wages and/or allegedly illegal payments by separate transaction, any failure to provide or pay for meal breaks, and/or rest periods, all claims for penalties or additional damages, including without limitation waiting time penalties. The Released State Law Claims include but are not limited to any claims arising under New York Labor Law ("NYLL") §§ 160 *et seq.*, 190 *et seq.* (including, but not limited to § 191, § 193 and § 198), 215, 650, 12 N.Y.C.R.R. §§ 146-1.1. *et seq.* (including, but not limited to, § 146-2.1 *et seq.* and § 146-3.1 *et seq.*) and any applicable Wage Order, and any and all other claims under any similar statute, order, rule or regulation which were or which could have been asserted in this Lawsuit.

1.30  **Release and Release Claims.** "Release" and "Released Claims" shall refer to the Released Federal Law Claims and the Released State Law Claims.

1.31  **Relevant Statutory Period.** The "Relevant Statutory Period" refers to the period between January 30, 2009 and the date of this Agreement.

1.32  **Second Payment Distribution.** "Second Payment Distribution" means the second and final round of Settlement Checks. The amount of the Second Payment Distribution shall be One Hundred Thousand and Forty Dollars and Zero Cents ($140,000.00), to be allocated first among the Eligible Class Members who mail in their Claim Forms after the deadline for the First Payment Distribution and second re-distributed to all Eligible Class Members

**1.33** **Second Payment Date.** "Second Payment Date" means the date by which Defendants must mail Settlement Checks for the Second Payment Distribution amount to Class Counsel, which shall be no later than eleven (11) months after Defendants' payment of the First Payment Distribution amount.

**1.34** **Settlement Checks.** "Settlement Checks" means checks issued by Defendants and transmitted by Class Counsel to Eligible Class Members for the Eligible Class Members' share of the Net Settlement Fund.

**1.35** **Term Sheet.** "Term Sheet" means the preliminary document setting forth the Parties' agreement to settle the Litigation, which was created by the Parties during the course of a full-day agreement held on October 6, 2017 and signed by the Named Plaintiffs, opt-in plaintiffs Jorge Hernandez, Jose Hernandez and Adolfo Antonio, Defendants, Class Counsel, and Defendants' Counsel.

**2.** **INITIAL PROCEDURAL ISSUES**

**2.1** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2** **Consent to Proceed before a Magistrate.** The Parties agree that, simultaneous with or before filing the Preliminary Approval Motion, they will consent to proceed before Magistrate Judge Levy in this Litigation.

**2.3** **Preliminary Approval Motion.**

(A) Plaintiffs will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") and allow Defendants an opportunity to review the terms of the Preliminary Approval Motion to ensure that the Motion is consistent with this Agreement.

(B) With the Preliminary Approval Motion, Class Counsel will submit to the Court, among other things: (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Deadline Reminder Notice to be mailed; (2) a Claim Form Class Members must fill out and return in order to participate in the Settlement and (3) a proposed Order preliminarily approving the settlement.

(C) The Preliminary Approval Motion also will seek the setting of date(s) for the Claim Period, within which time individuals must submit Claim Forms to receive monetary recovery from the Settlement, the end date of which will be thirty (30) days before the Second Payment Distribution Date as set forth in Section 3.1(C), or ten (10) months after Defendant's payment of the First Payment Distribution, to submit statements to opt-out of this Agreement or provide objections to this Agreement, which date will be thirty (30) days from the mailing and publication of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

7

(D)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) approve Service Awards to the Named Plaintiffs; and (5) award Class Counsel fees and costs.

(E)     While the Parties expect that the Preliminary Approval Motion will not be opposed and will be filed upon the consent of the Defendants, Defendants may respond to the Preliminary Approval Motion to ensure that it is consistent with the terms of this Agreement. Any response papers will be due seven (7) days after Plaintiffs file the Preliminary Approval Motion.

(F)     If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation.

(G)     The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within ten (10) days of the issuance of the Preliminary Approval Order, to the extent that they maintain such information and have not already transmitted such information to Class Counsel, Defendants will provide Class Counsel with the employment dates, last known addresses and telephone numbers of the 121 Class Members.

(B)     Within fifteen days (15) days of issuance of the Preliminary Approval Order, Class Counsel will mail to all 121 Class Members, via First Class United States Mail, postage prepaid, the Court–approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Court-approved Class Form. To the extent a telephone number is available, Class Counsel will also call all 121 Class Members to notify them of the Proposed Settlement.

(C)     Class Counsel will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable. Class Counsel will notify Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. For any Class Member whose mailing is returned as undeliverable for which Class Counsel is unable to locate an alternative address, Defendants shall inform Class Counsel of any known alternate addresses or other contact information

for attempted re-mailings. All such Class Member personal information will be treated as confidential information by Class Counsel.

(D)   Class Counsel will mail the Deadline Reminder Notice along with an appropriate Claim Form to Class Members from whom Counsel has not yet received a completed Claim Form approximately thirty (30) days after the mailing of the Settlement Checks for the First Payment Distribution.

**2.5   Class Member Opt-outs.**

(A)   Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to Class Counsel stating that he or she is opting out of the settlement. The statement should include his or her name, address and telephone numbers and state, "I opt out of the Buccaneer Diner unpaid wages settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked within thirty (30) days after Class Counsel mailed the initial Notice.

(B)   The end of the time period to opt-out of the settlement ("Opt-out Period") shall be thirty (30) days after the day on which Class Counsel successfully mails a Notice to a Class Member. Class Members whose first mailing was returned to Class Counsel as undeliverable, will be allowed a second thirty (30) day period to opt-out from the date of the second mailing. Class Counsel will not be required to attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to the Class Member.

(C)   Class Counsel will, within five (5) days after the last day on which Class Counsel mails the last Notice to any Class Member, notify Defendants' Counsel of the precise date of the end of the Opt-out Period.

(D)   Class Counsel shall serve copies of each Opt-out Statement on Defendants' Counsel not later than three (3) days after receipt thereof. Class Counsel will also, within five (5) days of the end of the Opt-out Period, file on ECF copies of any Opt-out Statements.

(E)   Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement. In order to receive a monetary recovery from the settlement, Class Members must return a Claim Form during the Claim period and will be issued a Settlement Check, which will contain a release of all claims asserted in the Litigation, as set forth in this Agreement.

**2.6   Objections to Settlement.**

(A)   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to Class Counsel via First-Class United States Mail, postage prepaid, or

9

by such other means as to be actually received by Class Counsel, thirty (30) days after Class Counsel mails Notice to such Class Member. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, address, and telephone numbers for the Class Member making the objection. Class Counsel will send copies of each objection to Defendants' Counsel by email no later than three (3) days after receipt thereof. Class Counsel will also file any and all objections with the Court within five (5) days after the end of the Opt-out Period.

(B)     An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     No later than fourteen (14) days prior to the Fairness Hearing, Class Counsel will submit to the Court a memorandum of law and any necessary affidavits, objections or opt-out information in support of a Motion for Final Approval and Dismissal ("Final Approval Motion"). While it is anticipated that such Final Approval Motion will be submitted with the consent of the Parties, Defendants' counsel will have seven (7) days to respond thereto and Class Counsel may file a reply no later than two (2) days before the Fairness Hearing.

(B)     At the Fairness Hearing and Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) approve the procedure for Defendants to provide Class Counsel with Settlement Checks, which Class Counsel will issue Settlement Checks to Eligible Class Members in the amounts set forth pursuant to the agreed-upon Settlement allocation; (3) order Class Counsel to distribute the Settlement Checks to the Eligible Class Members; (4) order the attorneys' fees and litigation costs to be paid to Class Counsel from the Settlement Amount; (5) order that Service Awards in an amount not to exceed Five Thousand Dollars ($5,000.00) be paid to each of the Named Plaintiffs; (6) order the dismissal with prejudice of all claims asserted in the Litigation, Released Claims and the claims of all Class Members who did not opt-out, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); (7) order entry of Judgment of Dismissal in accordance with this Agreement; and, (8) retain jurisdiction over the

interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)   If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)   If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)   If the Final Approval Order is not entered or is set aside, Class Counsel will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by Class Counsel via First Class United States Mail, postage prepaid, to the addresses used by Class Counsel in mailing the Notices.

**2.8    Discretionary Termination by Defendants Due to Opt-Outs.** In the event that ten percent (10%) or more of all Class Members timely opt out of the Agreement pursuant to Section 2.5, Defendants may, at their sole discretion, elect to void the Agreement at any time prior to final approval by the Court by informing Class Counsel or the Court in writing.

**2.9    Releases and Consents to Join.**

(A)   A Class Member who returns a Claim Form as set forth in Section 3.5 during the Claim Period and who does not timely return an Opt-out Statement will be issued a Settlement Check by Defendants in accordance with the Final Approval Order.

(B)   After receipt of the Settlement Checks from Defendants, Class Counsel will distribute the Settlement Checks to Eligible Class Members for the First Payment Distribution and for the Second Payment Distribution under Sections 3.4 and 3.5.

(C)   Defendants will re-issue a Settlement Check to a Class Member who provides a sworn statement to Class Counsel that he or she never received or lost the original Settlement Check, provided an effective stop-payment has been placed on the previously-issued Settlement Check to ensure that the amount payable to such Class Member is actually received by such Class Member.

(D)   Defendants will cooperate with Class Members and Class Counsel in effectuating stop-payments and re-issuing Settlement Checks in accordance with the procedure set forth in Section 2.9(C). In order to compensate Defendants for stop-payment fees and time necessary accomplish a stop-payment and re-issue a check, Defendants will be permitted to deduct fifty dollars ($50.00) from the amount of any re-issued Settlement Check.

11

(E)     The Settlement Check shall contain the following language: By endorsing, depositing, cashing, or negotiating this check, I consent to join the FLSA collective action against Defendants styled ***Cazares, et al. v. Ava Restaurant Corp., et al., No. 15 Civ. 477 (KAM)(RML)*** and release Defendants from all wage and hour claims under the Fair Labor Standards Act and/or New York Labor Law including all unpaid minimum wage, overtime, spread of hours claims for the Relevant Statutory Period.

## 3.     SETTLEMENT TERMS

### 3.1     Settlement Amount.

(A)     Defendants agree to pay a gross total Settlement Amount of Three Hundred and Forty Thousand Dollars and No Cents ($340,000.00), which shall fully resolve and satisfy all claims for damages to be paid to Class Members including costs and attorneys' fees. Under no circumstances will Defendants be required to pay more than $340,000 to the Class Members, Class Counsel, Named Plaintiffs, Opt-In Plaintiffs or to anyone else pursuant to the terms of this Agreement.

(B)     By no later than five (5) days before Defendants' payment deadlines, as set forth in Sections 3.1(C) & (D) and 3.5, Class Counsel will provide Defendants' counsel with a final calculation of Settlement Checks to be paid to Eligible Class Members in that payment distribution.

(C)     Defendants shall send to Class Counsel individual Settlement Checks to be distributed to Eligible Class Members in the total amount of the First Payment Distribution, which is Two Hundred Thousand Dollars and No Cents ($200,000.00), by no later than the First Payment Date, which shall be the date thirty (30) days after entry of the Final Approval Order.

(D)     Defendants shall send to Class Counsel individual Settlement Checks to be distributed to Eligible Class Members in the total amount of the Second Payment Distribution, which is One Hundred and Forty Thousand Dollars and No Cents ($140,000.00), by no later than the Second Payment Date, which shall be eleven (11) months after Defendants' payment of the First Payment Distribution.

(E)     In the event that Defendants fail to pay the Second Payment Distribution when due as set forth in Section 3.1(C), Class Counsel shall send a notice of default to Defendants' Counsel, via overnight traceable mail, either FedEx or UPS, at Ariadne Panagopoulou Esq., Pardalis & Nohavicka, LLP, 35-10 Broadway, Suite 201, Astoria, New York 11106, and by e-mail at ari@pnlawyers.com. Defendants shall have ten (10) business days from the date of said notice to cure any such default (the "Cure Period"). In the event that payment is not made within the Cure Period, Plaintiffs shall be entitled to file the Confession of Judgment in the form annexed hereto as **"Exhibit D"** and to enter judgment in the amount of $185,000. Plaintiffs shall hold the Confession of Judgment in escrow pending payment in full of the Settlement Amount.

(F)   Class Members will have 120 days from the date of mailing to cash their Settlement Checks.

(G)   Defendants shall not make any statements or in any way discourage Class Members from participating in the settlement, including but not limited to discouraging Class Members from cashing Settlement Checks.

(H)   If any Class Member does not cash his or her Settlement Checks within the initial 120 days, that Class Member will have up to six (6) months to make a request to Class Counsel for a replacement check ("Replacement Settlement Check"). The Class Member will have an additional 120 days from the date of mailing the Replacement Settlement Check to cash their Replacement Settlement Check. Defendants agree to cooperate with Class Counsel to provide Replacement Settlement Checks to Eligible Class Members that are requested as provided herein.

(I)   In the event that any Class Member fails to cash their Settlement Check or Replacement Settlement Check within 120 days from the date of the mailing of the check, Class Counsel shall: (1) redistribute the funds from those uncashed check(s) among the Class Members who had previously cashed Settlement Checks, in pro-rata payments based on the formulas described in Section 3.3, or (2) in the event that it costs more to redistribute the funds than is available for re-distribution, donate the funds to Nova Hope for Haiti

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)   At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount after reimbursement for litigation costs incurred of approximately $9,662.31. These fees and costs shall come out of the Settlement Amount. Defendants will not oppose Class Counsel's application of up to one-third of the Settlement Amount in attorneys' fees plus approximately $9,662.31 in costs and expenses incurred, provided it does not increase the Settlement Fund or otherwise affect the terms of this Agreement. *Attorney fees shall be paid to Class Counsel*

(B)   Class Counsel agree not to seek any additional litigation costs, expenses or attorneys' fees in connection with the Litigation, including any costs or fees incurred in connection with any former or currently pending motions or disputes in the Litigation. Class Counsel shall also waive any claim of attorney's fees and costs as a result of their Motion for Spoliation Sanctions, the amount of which is presently undetermined and pending before the Honorable Magistrate Judge Levy. *pro-rata over time between the First Payment Distribution and the Second Payment Assurance.*

(C)   The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. *REcR Ariadne*

13

**3.3     Service Awards to Named Plaintiffs**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs will apply to the Court to receive no more than Five Thousand Dollars ($5,000.00) each as a Service Award from the Settlement Amount.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval and Judgment.

**3.4     Allocation to Class Members.**

(A)     The allocation to Eligible Class Members for Settlement Checks will be made from the Settlement Amount after deductions for Court-approved Service Awards for the Named Plaintiffs, and attorneys' fees and costs for Class Counsel (the "Net Settlement Fund").

(B)     Each Eligible Class Member shall be sent a check issued by Defendants and distributed by Class Counsel in an amount representing that Eligible Class Member's *pro rata* share of the Net Settlement Fund.

(C)     Each Eligible Class Member's Settlement allocation of the Net Settlement Fund shall be calculated by Class Counsel and will be based upon that Eligible Class Member's alleged damages as calculated by Class Counsel and will be based upon the duration of each Eligible Class Member's employment at Buccaneer Diner and the position held by such Class Member during the Relevant Statutory Period in accordance with payroll records provided by Defendants to the extent available and relevant and Class Members' best recollections. Class Counsel shall transmit calculations of Eligible Class Members' damages to Defendants' Counsel within five (5) days of the pertinent payment date as section forth in Sections 3.1(C) & (D) and 3.5.

(D)     No person shall have any claim against the Parties and/or their counsel based upon the eligibility and/or calculations as to any distribution under this Agreement, and any such claims shall be exclusively limited to the amounts in the Settlement Fund.

(E)     <u>Wage Allocation and Tax Characterization</u>. Settlement Checks paid to Class Members will be allocated one hundred percent (100%) to 1099, such that individual settlement payments to Eligible Class Members shall not be subject to applicable payroll and withholding taxes. Payment of any taxes required by law on individual settlement payments shall be the responsibility of the individual Eligible Class Member.

**3.5     Payment Distribution to Eligible Class Members**

(A)   First Payment Distribution.  All Eligible Class Members who mail their Claim Forms to Class Counsel within ninety (90) days after the mailing of the initial Notice (the "First Payment Distribution Claim Period") shall be eligible to participate in the First and Second Payment Distribution.  The amount of the First Payment Distribution shall be Two Hundred Thousand Dollars and No Cents ($200,000.00), to be allocated under Section 3.3.  Class Counsel shall mail the Settlement Checks for the First Payment Distribution within ten (10) days after the later of the First Payment Date or the end of the First Payment Distribution Claim Period.

(B)   Second Payment Distribution.  All Eligible Class Members who mail their Claim Forms to Class Counsel after the close of the First Payment Distribution claim period and by no later than thirty (30) days before the Second Payment Distribution Date set forth in Section 3.1(C) (the "Second Distribution Claim Period") shall be eligible to participate in the Second Payment Distribution.  The amount of the Second Payment Distribution shall be One Hundred and Forty Thousand Dollars and No Cents ($140,000.00).  Class Counsel shall mail the Settlement Checks for the Second Payment Distribution within ten (10) days after the later of the Second Payment Date or the end of the Claim Period. This amount will be allocated first to the Eligible Settlement Members who mailed their Claim Forms during the Second Payment Distribution Claim Period, under Section 3.3.  Any remaining amounts shall then be re-distributed to all Eligible Class Members under Section 3.4.

(C)   Claim Period. Any Class Member who does not mail a Claim Form by the close of the Claim Period (by no later than thirty (30) days before the Second Distribution Payment Date) shall not be eligible to participate in the Settlement.

4.   **RELEASE**

4.1   **Release of Claims.**

(A)   Upon the Effective Date, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' subsidiaries (including but not limited to any grandchild entities, great grandchild entities, and so on), parents (including but not limited to any grandparent entities, great grandparent entities, and so on), affiliates, successors, related entities, assigns, heirs, executors, administrators, and attorneys, and all of the present and former directors, officers, partners, shareholders, members, employees, representatives, agents, attorneys, owners, insurers, Costas Alexiou, and all persons acting by, through, under or in concern with him (collectively "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Releasees under ~~federal~~, state and/or local law, including but not limited to, any and all claims for unpaid wages, overtime wages, tips, gratuities, service charges, administrative or

15

other mandatory charges, liquidated damages, penalties, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, spread-of-hours claims, meal break claims, meal credit claims, uniform maintenance claims, uniform or tools-of-the trade reimbursement claims, call-in pay claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under ~~federal~~, New York state and/or local wage and hour laws, including but not limited to ~~the Fair Labor Standards Act~~, New York Labor Law, New York Code of Rules and Regulations, New York Hospitality Industry Wage Order, New York Order for Miscellaneous Industries and Occupations, the New York Restaurant Industry Wage Order, and the New York Wage Theft Prevention Act, through the Effective Date. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees' and costs.

(B)     In the event any Named Plaintiff and Opt-in Plaintiff files or instigates any complaint, grievance, suit, action, charge, or proceeding involving claims which have been released in accordance with this Agreement, that Plaintiff shall reimburse Defendants for the legal fees and costs incurred defending any such action or proceeding as well as any claim, action or proceeding relative to Plaintiffs' wage and hour claims initiated against Defendants by a third-party for the direct or indirect benefit of that Plaintiff.

(C)     Except as provided in this Agreement, Class Counsel and Named Plaintiffs on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

(D)     No person shall have any claim against the Parties or Counsel based on mailings, distributions and payments made, or any other action taken, in accordance with or pursuant to this Agreement or any order of the Court. For example, no person shall have any claim against either Party or Counsel resulting from use of an incorrect mailing address for a Class Member, or the payment of an incorrect amount to an Eligible Class Member. The Parties shall take reasonable steps to remedy any correctable errors.

**4.2     Reemployment of Named Plaintiffs and Opt-in Plaintiffs.** ~~The Named and Opt-in Plaintiffs~~ knowingly and voluntarily agree to relinquish and hereby do relinquish any and all rights ~~they~~ may have to either directly or indirectly: (i) be employed by, (ii) be assigned to, (iii) work for, (iv) seek employment with or apply to, (v) accept employment with, or (vi) provide services in exchange for compensation in any capacity to (including but not limited to as an employee, independent contractor, consultant or temporary employee) of Releasees. ~~The Named and Opt-in Plaintiffs~~

16

*Ariadne Defendants* *RGR*

agrees that they ~~will~~ [he] not seek, apply for, or accept any employment or assignment to which ~~they have~~ [he has] relinquished any rights, and that in the event ~~they~~ inadvertently seeks [he] apply~~s~~ for, or accept~~s~~ any employment or assignment to which ~~they have~~ [he has] relinquished any rights ~~they~~ [he] will immediately withdraw, forego, leave and/or voluntarily terminate such inquiry, application, employment and/or assignment. Releasees may also immediately terminate any employment or assignment to which the ~~Named or Opt-in Plaintiffs have~~ [he has] relinquished any rights at any time. ~~The Named and Opt-in Plaintiffs~~ agree~~s~~ and understand~~s~~ that this provision is a negotiated provision of this Agreement and is intended to protect the Releasees from allegations of retaliation.

*Rodei Leonel Ovalle Perez*
*Rodei Leonel Ovalle Perez*

**4.3   Denial of Liability.**

(A)    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that the class certified as "all servers, bussers, dishwashers, delivery employees, food preparers and cooks employed at Buccaneer Diner at any time from January 30, 2009 through March 31, 2017" properly includes any individual who was defined as an Eligible Class Member for the purposes of this settlement. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.     NON-DISPARAGEMENT, ASSISTANCE OF THIRD PARTIES**

**5.1    Mutual Non-Disparagement.** Plaintiffs agree that their counsel will not upload to, and/or will remove any reference from, its websites, blogs, social media and any promotional material about this Lawsuit. Unless required to do so by legal process, the Parties agree not to make, or cause to be made, any disparaging statement, representations, comment, or publication ("Disparaging Statements"), whether orally or in writing, by word or gesture, to any person whatsoever about each other. For purposes of this paragraph, a Disparaging Statement is any communication made for the purpose of directly or indirectly adversely impacting the business or reputation of the person or entity to whom or which the communication relates, provided however that nothing herein shall restrict or otherwise prevent Plaintiffs from making truthful statements, or giving their opinions, about their experience related to the Litigation.

**5.2    Non-Assistance to Third Parties.**

(A)    ~~Plaintiffs shall not, directly or indirectly, provide assistance to, confer with, aid, or advise, in any way, any third party, person or entity, including but not limited to any former employee of Defendants, with respect to any litigation, arbitration, and/or civil action in which the Defendants could be implicated or discussed in any way, unless pursuant to subpoena or other compulsory legal process.~~ In the event

*RGR*

*(Ariadne (Plaintiffs)*

17

*Erick Perez*

*Emmanuel Cagares.*

*[handwritten: the Named Plaintiffs or Opt-in]*

that ~~any~~ Plaintiff is served with a subpoena or some other compulsory legal process that the Plaintiff or his/her attorney ~~believes will oblige him/her to provide any such assistance, aid, or advice in a manner that would otherwise be prohibited under this Section, prior to providing any such assistance, aid, or advice,~~ within five (5) business days of receipt of such subpoena or other process, that Plaintiff agrees to notify the Defendant by providing a copy of the subpoena or other process to Defendant, with a written statement of when and how the subpoena or other process was delivered to him/her, and to assist in any way required by Defendant, to seek, if necessary, an appropriate protective order. *[handwritten marginalia]*

(B)    Nothing in this Agreement infringes on any Plaintiff's ability to testify, assist or participate in an investigation, hearing or proceeding conducted by or to file a charge or complaint of discrimination with the United States Department of Labor, the New York State Department of Labor, the National Labor Relations Board, U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge or complaint, issuing a determination, filing a lawsuit in federal or state court in their own name, or taking any other action authorized by law. Further, nothing in this Agreement shall prohibit any Plaintiff from making truthful statements pursuant to legal process (e.g. in a deposition, under subpoena) or to any government entity or agent.

(C)    Class Counsel hereby represents and warrants that they are not aware of any other current or former employees of Defendants that intend to, or are in the process of, or are considering asserting any legal claims against the Defendants of any nature whatsoever. Class Counsel further represents and warrants that they do not represent any other current or former employees of Defendants, including any individuals who have previously opted out of this Litigation, with regards to any legal claims or complaints.

## 6.    TAX LIABILITY

6.1 . It is Defendants' intention that all payment provided under this Agreement are excepted from or comply with Section 409A of the Internal Revenue Code 1986, as amended (the "Code") as amounts paid as bona fide legal settlements under Treasury Regulation Section 1.409A-1(b)(11), and this Settlement shall be interpreted, administered and operated accordingly. Notwithstanding anything the contrary herein, Defendants do not guarantee tax treatment of any payments or benefits under this Settlement, including without limitation under Code, federal, state, local or foreign tax laws and regulations. Plaintiffs agree that they have not relied on any advice from Defendants or their attorneys concerning the tax consequences of the payments made pursuant to this Agreement, but are relying on their own judgment and the advice of their own counsel in this matter. Plaintiffs, Opt-in Plaintiffs and Class Members shall be, responsible for all federal, state, and local tax liabilities attributable to them that may result from the payments under this Agreement, and Plaintiffs hereby warrant that Defendants shall bear no responsibility for any such tax liabilities. Plaintiffs, Opt-in Plaintiffs and Class Members further agree to hold Defendants harmless to the full extent of any such liabilities, payments, or costs, including taxes, interest, and penalties

that may be assessed against or incurred by Defendants resulting from Plaintiffs', Opt-in Plaintiffs' or Class Members' failure to pay taxes owed for payments under this Agreement. Should any tax liability arise or accrue to Plaintiffs, Opt-in Plaintiffs or any Class Member, under local, state, or federal tax law as a result of their failure to pay taxes for payments made under this Agreement, that Plaintiff, Opt-in Plaintiff or Class Member will pay any and all such finally determined obligations without seeking indemnity or reimbursement from Defendants.

6.2 With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Class Counsel assumes responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

## 7. INTERPRETATION AND ENFORCEMENT

7.1 **Cooperation Between the Parties; Further Acts.** The parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

7.2 **No Assignment.** Class Counsel and the Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action and covenant that no such assignment or transfer shall be made hereafter.

7.3 **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

7.4 **Binding Effect.** This Agreement shall be binding upon the parties and, with respect to the Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

7.5 **Arms' Length Transaction; Materiality of Terms.** The parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and

have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

**7.6**   **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**7.7**   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**7.8**   **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect unless the effect upon the Agreement caused by such holding shall cause material changes to the rights or obligations of the parties under this Agreement, in which event this Agreement shall be deemed void in its entirety.

**7.9**   **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**7.10**   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**7.11**   **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**7.12**   **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**7.13**   **Signatures of Named Plaintiffs.** This Agreement is valid and binding if signed by Defendants' authorized representative and by the Named Plaintiffs.

**7.14    Facsimile and Email Signatures.** Any party may execute this Agreement by signing on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

[Remainder of Page Intentionally Left Blank]

WE AGREE TO THESE TERMS,

**For Plaintiffs (on behalf of themselves and on behalf of the Class):**

_____          11/17/17
Emmanuel Cazares                            Dated

_____          11/17/17
Erick Perez                                 Dated

_Jorge Hernández_                           12/5/2017
Jorge Hernandez                             Dated

_Jose-Hernandez_                            12/5/17
Jose Hernandez                              Dated

_ADOLFO ANTONIO_                            12/05/17
Adolfo Antonio                              Dated


_____          _____
Reynaldo Reyes                              Dated

_____          12-04-17
Diego Matias Vega Flores                    Dated

_____          12-04-17
Oscar Lopez                                 Dated

_____          12/7/17
Brent E. Pelton, Esq.                       Dated
Taylor B. Graham, Esq.
_Attorneys for Plaintiffs_

22

WE AGREE TO THESE TERMS,

For Plaintiffs (on behalf of themselves and on behalf of the Class):

_____          11/17/17
Emmanuel Cazares                   Dated

_____          11/17/17
Erick Perez                        Dated

_____          _____
Jorge Hernandez                    Dated

_____          _____
Jose Hernandez                     Dated

_____          _____
Adolfo Antonio                     Dated

_____          12/06/17
Reynaldo Reyes                     Dated

_____          _____
Diego Matias Vega Flores           Dated

_____          _____
Oscar Lopez                        Dated

_____          _____
Brent E. Pelton, Esq.              Dated
Taylor B. Graham, Esq.
Attorneys for Plaintiffs

**For Defendants:**

_____
Ava Restaurant Corp.

By _Costas Alexiou_

Its _President - owner_

Dated 12/18/17

_____
Costas Alexiou

Dated 12/18/17

23